[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
ISSUE
Should the defendant's motion to dismiss the prejudgment remedy of attachment be granted on the ground that the writ, summons and complaint were not served and returned to court within thirty days of the order of attachment as required by General Statutes § 52-278j?
FACTS
On March 15, 1996, the court, Hurley, J., granted the application of the plaintiff, Hazel Williamson (Williamson), for a prejudgment remedy of attachment against the defendant, David Seidman (Seidman). The application was granted after an evidentiary hearing, as required by General Statutes §52-278d. Thereafter, on April 19, 1996, the court, Hurley, J., ordered the attachment of certain property of the defendant, located in West Hartford, Connecticut, in the amount of one hundred thousand dollars.[1]
On September 16, 1996, Seidman filed a motion to dismiss the attachment and a memorandum in support thereof.[2] Seidman moves for dismissal on the ground that Williamson did not effect service of process within the thirty day period prescribed in CT Page 8399 General Statutes § 52-278j.[3] According to Seidman, Williamson was required to serve and return to court the writ, summons and complaint within thirty days of the order of attachment. Seidman states that service of process was made on him on May 28, 1996, more than thirty days after the court's order on April 19, 1996.[4]
On October 7, 1996, Williamson filed an objection to the motion to dismiss and a memorandum of law in support thereof. Williamson objects to Seidman's motion on several grounds, all of which relate to the fact that, although Williamson delivered the writ, summons and complaint to the sheriff within the thirty day statutory period, the sheriff failed to make service due to the death of his wife. In this regard, Williamson argues that dismissal under General Statutes § 52-278j is discretionary, not mandatory. Secondly, she argues that Seidman has waived his right to claim that the attachment should be dismissed by proposing a particular piece of property for attachment and by agreeing to a delay in the issuance of the order pending a review of his proposal. For the same reasons, Williamson argues that Seidman's claim is barred by the doctrine of estoppel. Finally, Williamson contends that the doctrine of laches bars Seidman's claim because Seidman did not file the motion to dismiss until three months after the alleged insufficient service. Williamson claims that the delay in filing the motion has given Seidman an opportunity to dispose of or hide other assets to which an attachment could apply.
DISCUSSION
A claim of insufficient service of process is properly raised by a motion to dismiss. Knipple v. Viking Communications, Inc.,236 Conn. 602, 612 n. 3, 674 A.2d 426 (1996); Practice Book § 142. A motion to dismiss is the proper procedural device to contest the prejudgment remedy of attachment for insufficient service of process under General Statutes § 52-278j. ThornAmericas, Inc. v. Torres, 34 Conn. App. 303, 305, 641 A.2d 386
(1994); Grillo v. Szarka, Superior Court, judicial district of Tolland at Rockville, Docket No. 55492 (November 22, 1994, Rittenband, J.); but see Sears Roebuck Co. v. O'Hara, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 304373 (February 24, 1994, Ford, J.) (motion for mandatory withdrawal).
"A prejudgment remedy proceeding is not an adjudication on CT Page 8400 the merits but rather is `concerned with whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication on the merits of that action.'" Knickerbocker v. VillageApartments Properties, Inc., Superior Court, judicial district of Litchfield, Docket No. 058389 (September 23, 1992, Pickett, J.), quoting Ledgebrook Condominium Assn., Inc. v. Lusk Corp.,172 Conn. 577, 583, 376 A.2d 60 (1977).
"Prejudgment remedies by way of attachment and garnishment were unknown to the common law; therefore, the authorizing statutes must be strictly construed." Norwalk Bank v.Tomborello, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 286007 (June 4, 1992, Spear, J.). Service of a writ of attachment is a jurisdictional prerequisite to a court's in rem jurisdiction. 1 R. Dupont, Connecticut Trial Practice (1996) §§ 49.01 through 49.03, pp. 124-25.
1. Whether the Plaintiff's Failure to Comply with Service ofProcess Under General Statutes § 52-278j Subjects thePrejudgment Remedy of Attachment to Dismissal.
Williamson argues that § 52-278j is directory, not mandatory. Williamson cites Merrell v. Southington, 42 Conn. App. 292, ___ A.2d ___ (1996), for the proposition that the test to be applied in determining whether a statute is mandatory or directory is whether the statute relates to a matter of substance or a matter of convenience. She argues that service of process in prejudgment remedy proceedings is a matter of convenience, designed to secure order, system and dispatch in the proceedings. Thus, she contends that § 52-278j is directory, not mandatory.
Prior to the adoption of Public Act 91-315, which effected a change in the provisions of General Statutes § 52-278j, cases held that the time limits in the statute were not mandatory, and therefore were not jurisdictional. See, e.g., Baldwin Piano Organ Co. v. Blake, 186 Conn. 295, 299, 441 A.2d 183 (1982) (Peters, C.J., concurring); Gloria v. Manuel, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 272238 (May 2, 1991, Katz, J.); Jannotta v. Nucera, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 270470 (February 1, 1991, Thim, J.).[5] Public Act 91-315 changed the statutory language, however, from a statement that the court "may" dismiss the prejudgment remedy to a statement that the CT Page 8401 court "shall" dismiss the prejudgment remedy, if the writ, summons and complaint are not filed within the thirty day period.
The change in the statutory language from "may" to "shall" indicates that the legislature made "an affirmative selection of words with a specific intent to make use of each word's distinctive meaning." Ferro v. Morgan, 35 Conn. Sup. 679, 681,406 A.2d 873, cert. denied, 177 Conn. 753, 399 A.2d 526 (1979). Ordinarily, the word "shall" connotes that the directive is mandatory, not permissive. Id.; Lauer v. Redding ZoningCommission, Superior Court, judicial district of Danbury, Docket No. 308443 (April 27, 1995, Riefberg, J.) (stating that "[t]he general rule is that the word `shall' is mandatory, not directory."). Thus, "[i]f read according to the commonly approved usage of its language, the statute then speaks for itself."Ferro v. Morgan, supra, 681. The legislative history of §52-278j is instructive. Senator Avallone stated: "The bill requires, instead of permits, a court to dismiss [a] PJR, prejudgment remedy or order the application for a PJR to be considered withdrawn if the plaintiff does not institute the action within a specified period of time. It used to be 90 days, now they have to file the action in 30 days." 34 S. Proc., Pt. 10, 1991 Sess., p. 118, remarks of Senator Avallone. Thus, it appears that the directive in § 52-278j is mandatory.
In Jepsen v. Toni Co., 20 Conn. Sup. 287, 133 A.2d 150
(1957), the defendant moved to quash an order of further attachment on the ground that process was not returned to the court in accordance with the statutory requirements. Id., 294. The order for attachment was made returnable on the first Tuesday of February, 1957. Id., 294. The officer's return was made to the court on February 4, 1957, which was the day before the first Tuesday of February, 1957. Id. The court cited former General Statutes, Section 8069, which provided that any order for attachment issued by a court "`shall be served and returned in the same manner as an original writ of attachment.'" Id., quoting General Statutes (1949 Rev.) § 8069. The court then referred to General Statutes, Section 7767, which provided that process in civil actions returnable the Superior Court "`shall be returned . . . to the clerk of the court at least six days before the return date.'" Id., 294-95, quoting General Statutes (1949 Rev.) § 7767.[6] The court held that "the statute is mandatory and failure to return the process to court within the time limited renders the attachment proceedings fatally defective." Id., 295. The Jepsen court granted the defendant's CT Page 8402 motion to quash on the ground that the service of process was not timely returned to the court. Id.
In the present action, not only was process returned late, service was made late as well. Although the statutory period for return of process in Jepsen was governed by what is now §52-46a, and the statutory period for service of process in this action is governed by 52-278j, Jepsen is instructive for its holding that adherence to requirements of statutes specifying time limitations for service of process are mandatory in nature and will subject an order of attachment to dismissal. See alsoRogozinski v. American Food Service Equipment Corp., 211 Conn. 431,433, 559 A.2d 1110 (1989) (stating that requirements of General Statutes § 52-46a are mandatory); Vierra v. Uniroyal,Inc., 28 Conn. Sup. 489, 492, 266 A.2d 900 (1970), citing Daleyv. Board of Police Commissioners, 133 Conn. 716, 54 A.2d 501
(1947) (stating that requirements of General Statutes § 52-46
are mandatory).
2. Whether the Late Service and Return of Process is Saved byGeneral Statutes § 52-593a.
The late service of process in this case is not saved by General Statutes § 52-593a. According to this statute, "if the process to be served is personally delivered to a sheriff within the time limited by law, and is then served within fifteen days of delivery, it is timely." Flaim Enterprises, Inc. v.Planning Zoning Commission, Superior Court, judicial district of New Haven at New Haven, Docket No. 305860 (February 27, 1991, Celotto, J.). The writ, summons and complaint were delivered by mail to Sheriff DeVito on May 8, 1996, before expiration of the thirty day period in § 52-278j. (Plaintiff's Memorandum of Law, 10/7/96, Exhibit E: Letter to Sheriff DeVito from Barry J. Ward, Esq., enclosing writ, summons and complaint). Assuming that the papers were "personally delivered" to the sheriff as that term is used in § 52-593a, the sheriff had fifteen days from May 8, 1996 to effect service, that is, until May 23, 1996.
At an unspecified date in May, plaintiff's counsel learned that Sheriff DeVito failed to make service due to the death of his wife. (Plaintiff's Memorandum of Law, Affidavit of Joanna Lazarus, 10/7/96, para. 8). Sheriff DeVito agreed to send the papers to another sheriff for service. (Affidavit of Joanna Lazarus, para. 8.). On May 30, 1996, plaintiff's counsel learned that Sheriff Glassman served Seidman with process on May 28, CT Page 8403 1996. (Affidavit of Joanna Lazarus, para. 10). Accordingly, service was made on Seidman more than fifteen days from the date of delivery to Sheriff DeVito, and § 52-593a is not applicable.
If, however, personal delivery of the papers to Sheriff Glassman was made within the thirty day period under §52-278j, and Sheriff Glassman then served Seidman within fifteen days of that delivery, § 52-593a would operate to save the untimely service under § 52-278j. Williamson does not advance this argument, however, and the record is devoid of facts which would support it. For example, the file does not indicate the date delivery of the papers was made to Sheriff Glassman.[7]
3. Whether the Doctrine of Laches Properly Applies to this Case.
Williamson argues that the doctrine of laches bars Seidman's claim. Williamson bases this argument on the fact that Seidman was served with process on May 28, 1996, and did not file his motion to dismiss until September 16, 1996, three and one half months later. Williamson argues that this delay works a prejudice to her because Seidman has had an opportunity to hide or dispose of other assets to which a renewed order of attachment could apply.
"Laches consists of an inexcusable delay which prejudices . . . [a party]." Federal Deposit Insurance Co. v.Voll, 38 Conn. App. 198, 210, 660 A.2d 358, cert. denied,235 Conn. 903, 665 A.2d 901 (1995). The court has located no Connecticut cases wherein the doctrine of laches applied to prevent dismissal of an action for late service of process. Accordingly, the court finds that there is no authority to extend the application of the doctrine to the facts of this case.[8]
In addition, the court has located no case wherein timely service of process was excused because of a sheriff's neglect in making service. Arguably, it is incumbent on the plaintiff's attorney to confirm that service was made within the statutory period. See Caruso v. Zoning Board of Appeals, Superior Court, judicial district of New Haven at Meriden, Docket No. 250935 (February 13, 1996, Silbert, J., 16 Conn. L. Rptr. 302).
[[It does not escape the court that considerable time and resources, of both the state and the parties, were expended in conducting the evidentiary hearing in this matter and in CT Page 8404 resolving the issues pertaining to the appropriateness of an attachment order. It is the opinion of this court, however, that, based on the language of § 52-278j, dismissal is required. See Thorn Americas, Inc. v. Torres, supra, 34 Conn. App. 305;Grillo v. Szarka, supra, (dismissal under § 52-278j(b));Sears Roebuck Co. v. O'Hara, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 304373 (February 24, 1994, Ford, J.) (dismissal under § 52-278j(b)). "Where . . . the language of the statute is clear and unambiguous, courts may not by construction supply omissions in a statute, or add exceptions merely because it appears to them that good reasons exist for doing so." Simko v. Zoning Board of Appeals, 205 Conn. 413, 418,533 A.2d 879 (1987), modified on other grounds, 206 Conn. 374,538 A.2d 202 (1988).]]
The motion to dismiss the attachment is hereby granted. The court must note that the statute is so difficult to enforce that there is, as a result, a substantial danger of wasting judicial resources as in this case. This court must observe and suggest that because of the problems in enforcing the statute, the better alternative would be to repeal it in its entirety.
Hurley, J.